| 44 | 517 |
| 81 | 157 |
| 44 | 517 |
| 91 | 690 |

## JOHN H. OWEN v. CITY OF NAVASOTA.

1. EXECUTION SALE.—A purchaser at execution sale who looks to the record and finds there a valid subsisting judgment authorizing the execution under which the officer proceeds, and who in good faith buys, pays the purchase-money and receives a deed, takes a title which is valid until the sale is set aside.

2. SAME—HOW SET ASIDE.—A sale made under execution in violation
of the order of plaintiff, and in which property has been sacrificed,
may be set aside by motion in the court from which the execution
issued, with notice to the purchaser, or by appealing to the equitable
jurisdiction of the court, setting up grounds for equitable relief,
offering to repay the purchase-money, and to do equity.

3. STAY OF JUDGMENT.—A sale made by a deputy sheriff under an exe-
cution issued upon a judgment, which by agreement of parties had
been stayed, and notice of stay given to the sheriff, but not commu-
nicated to the deputy making the sale, and the purchaser being ig-
norant of the agreement, is not void, though it may be avoided as
above.

APPEAL from Grimes.    Tried below before the Hon. J. R.
Burnett.

The facts are fully stated in the opinion.

*J. C. Hutcheson,* for appellant, cited Coffee *v.* Silvan, 15
Tex., 362 ; Riddle *v.* Bush, 27 Tex., 675 ; Howard *v.* North,
5 Tex., 290 ; Sydnor *v.* Roberts, 13 Tex., 620 ; Ayres *v.*
Duprey, 27 Tex., 593 ; Hancock *v.* Metz, 15 Tex., 210 ;
Webb *v.* Mallard, 27 Tex., 82 ; Moore *v.* Lowery, 27 Tex.,
541 ; Jackson *v.* Rosevelt, 13 Johns., 97 ; Jeans *v.* Wilkins,
1 Vesey, 105 ; Sumner *v.* Moore, 2 McLean, 59 ; Jackson
*v.* Robins, 16 Johns., 537 ; Jackson *v.* Bartlett, 8 Johns.,
391 ; 3 Wash. C. C. R., 546, 550 ; Swiggart *v.* Harber, 5
Ill., (4 Scam.,) 364 ; 1 Hill, (S. C.,) Eq. R., 129–415 ;
Outcolt *v.* Desborough, 2 Green, (N. J.,) Ch., 214 ; Walker *v.*
McKnight, 15 B. Monr., 476 ; Freem. on Judg., sec. 589
and cases cited ; Bombay *v.* Boyer, 14 Serg. & R., 225 ;
Gibson *v.* Winslow, 38 Tenn., 49 ; 6 Cow., 457 ; 1 Rich.,
(S. C.,) 18 ; Cook on Shffs. Sale, 406 ; 9 Wend., 53 ; Allen
*v.* Stephanes, 18 Tex., 608 ; 8 Wend., 192.

GOULD, ASSOCIATE JUSTICE.—Appellant brought this action
of trespass to try title to recover of the city of Navasota cer-
tain town lots.    He claimed title by virtue of his purchase
under an order of sale issued on a judgment recovered by
John B. Farris against the city of Navasota for the sum of

$873.30, in June 7, 1872, by which the sale of the lots in controversy was decreed to satisfy the vendor's lien.   After the recovery of this judgment by Farris, and before the sale, the following instrument was executed :

" NAVASOTA, *July* 24, 1872.

" The following agreement is hereby entered into by J. B. Farris, of the one part, and the members of the finance committee, (present,) B. Goodman, H. K. White, and Jim Hampton, of the second part :  J. B. Farris agrees to withdraw his suit now pending against the city of Navasota for ($869$\frac{60}{100}$) eight hundred and sixty-nine $\frac{60}{100}$ dollars, and we, B. Goodman, H. K. White, and Jim Hampton, members of the finance committee, acting for and on account of the city of Navasota, agree to pay J. B. Farris two and a half per cent. per month on the above-named amount, $869$\frac{60}{100}$, dating from the institution of said suit, and running to January 1, 1873.   The committee also agree to pay the court fees in said suit ; all of which is submitted to the board of aldermen for their action and approval.   It is agreed the interest is to be paid in monthly installments."

This instrument was signed by the parties, and approved on August 5th by the mayor and city counsel.

Notwithstanding this agreement the deputy sheriff of Grimes county, acting under instructions previously received from the attorney of Farris, in obedience to an order of sale issued July 16, 1872, and in ignorance of this agreement, proceeded to sell the lots on the first Tuesday in September, 1872, at the town of Anderson, at which sale the plaintiff, Owen, became the purchaser, for the sum of one hundred and thirty-five dollars.   Owens paid the amount of his bid and received a conveyance from the deputy sheriff.

On the evening preceding the sale, the sheriff was told by Farris and the mayor to stop the sale, and promised to send word to his deputy at Anderson and stop it.   It was in evidence that it was generally known at Navasota that the

sale was not to take place, and the result was that sundry parties failed to be present, and that the lots sold for $135, when their value was $2,500. The deputy sheriff testifies that he received no message to stop the sale, and it does not appear that Owen, the purchaser, had any notice of the agreement. On the contrary, he testifies that he bought in good faith, and in ignorance of anything to prevent the sale.

The facts as to the agreement, notice to the sheriff, inadequacy of price, and the cause thereof, were set up in an answer, in which, whilst it was claimed that the judgment was satisfied, the court was asked to vacate the sale. There was, however, no proffer to return to plaintiff Owen the purchase-money paid by him, nor was the plaintiff in execution, Farris, made a party. The issue upon which the case was actually tried was the validity of plaintiff's title under his sheriff's deed.

The charge of the court was to the effect, that if the instrument of July 24th " referred to the judgment under which the land was sold, and the sheriff of Grimes county was notified by Farris the day before the sale of the arrangement between the parties, then the sale was absolutely void as against the defendant, and the plaintiff, whether acting in good faith or not, took no title."

The jury having found for the defendant, and the plaintiff having appealed, the correctness of this charge is the main question presented.

We think the true construction of the agreement of July 24th is that the parties intended that there should be a stay of proceedings under the judgment until January 1, 1873. The terms used must be construed with reference to existing facts. The suit had already terminated in a judgment. The agreement is silent as to the principal debt, and provides only for interest up to January 1, 1873, and it seems unreasonable that it could have been designed to operate as a satisfaction or discharge of the debt or judgment.

If the judgment had in fact been satisfied in full prior to the sale, there are cases of high authority which hold that the sale is absolutely void, and confers no title on the purchaser, although there was nothing of record to show the satisfaction, and the purchaser bought in perfect good faith. (Hunter *v*. Stevenson, 1 Hill, S. C., 415; Wood *v*. Colvin, 2 Hill, N. Y., 566; Johnson *v*. Caldwell, 1 Conn., 622; Neilson *v*. Neilson, 5 Barb., 575; Myers *v*. Cochran, 29 Ind., 256; Trigg *v*. Ross, 35 Mo., 165.)

It is not our purpose to express any opinion on this proposition, as in this case it is not necessary that we should do so. In its terms it applies only to cases of judgment satisfied in full, and it is believed that its extension to other cases, apparently within its reach, has not been found. (Walker *v*. McKnight, 15 B. Monr., 476; Freeman on Judgments, sec. 480.)

It must be conceded that the distinction between a satisfied judgment and one which is stayed, so far as it affects the authority to sell pending the sale, is not very apparent. The reason given, that without a valid subsisting judgment there is no power to sell, and that a purchaser under a power buys at his own risk, seems scarcely more applicable in the one case than in the other. But we have been cited to no authority which goes to the extent of holding that an agreement between the parties to stay a sale, though known to the sheriff, operates such a destruction of the authority to sell as to render a sale thereafter void. On the other hand it has been held incompetent to impeach a sheriff's deed by parol evidence that the execution had been withdrawn and the levy abandoned. The remedy, it is said, would be not to attack the deed collaterally, but to apply to the court to set it aside. (Jackson *v*. Vanderheyden, 17 Johnson, 167.)

In questions of this nature, affecting titles to lands, it is proper to follow in the beaten path of authority. But we are not disposed to go beyond the authorities in declaring

public sales absolutely void because of matters not apparent of record.

The general rule is believed to be that a purchaser at execution sale, who looks to the record and finds there a valid subsisting judgment authorizing the execution under which the officer proceeds, and who in good faith buys, pays the purchase-money and receives a deed, takes a title which is valid until the sale is set aside. (Riddle v. Bush, 27 Tex., 677 ; Coffee v. Silvan, 15 Tex., 354 ; Sydnor v. Roberts, 13 Tex., 598; Rorer on Jud. Sales, sec. 836, and references.)

If the officer has either willfully or negligently proceeded to sell in violation of instructions, and as a result property is sacrificed, the parties are not without remedy. By motion in the court from which the execution issued, with notice to the purchaser, the sale may be, for good cause, set aside. (McLean County Bank v. Flagg, 31 Ill., 295; Rorer on Jud. Sales, secs. 850, 851, 862, and authorities cited; Ayres v. Duprey, 27 Tex., 593 ; and see Bryan v. Bridge, 6 Tex., 141.)

The same end may be accomplished by an application to the equitable power of the court in which title under such a sale is set up, showing good equitable grounds for relief, and of course proffering to do equity. (Loveland v. Morsell, 1 Hill, S. C., Eq., 129; Ayres v. Duprey, *supra;* Chamblee v. Tarbox, 27 Tex., 145; Allen v. Stephanes, 18 Tex., 658.)

Whilst the remedies are thus ample to protect the parties to the judgment, and at the same time protect the *bona fide* purchaser, no good reason is perceived for introducing an additional element of uncertainty into titles derived through execution sales, by holding an agreement for a stay of execution not appearing of record to have the effect of rendering a sale under the execution absolutely void.

Because of the error in the charge of the court, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.